Jonathan D. Miller (SBN 220848)
jonathan@nps-law.com
Jennifer M. Miller (SBN 228973)
jennifer@nps-law.com
NYE, PEABODY, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

Attorneys for Defendant, THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY NEUSHUL<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA<br><br>Defendant. | CASE NO.: 2:15-CV-06286-FMO (ASx)<br><br>**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 3, 2016<br>Time: 10:00 a.m.<br>Dept.: 22<br><br>Complaint Filed: 8/19/15<br>Trial Date: January 10, 2017 |

## I. INTRODUCTION

In the Spring of 2013, Athletic Director Mark Massari and Senior Women's Administrator Diane O'Brien at the University of California, Santa Barbara received numerous and serious complaints from student athletes and parents about Plaintiff's coaching. They also received reports of Plaintiff's failure to get medical care for two seriously ill players and taking money directly from players for a team trip. These complaints were not something Mr. Massari or Ms. O'Brien could ignore. In response, Ms. O'Brien went to Labor and Relations to seek advice on how to proceed. She was advised to investigate the complaints to see if they were substantiated by other players on the team. This investigation revealed that the original complaints were in fact substantiated by other players. In total, eighteen players and parents had complaints about Plaintiff's coaching. Mr. Massari took the complaints seriously and met with both Ms. O'Brien and Angela Roach at Labor and Relations about the complaints. In addition, players on the team requested a meeting with Mr. Massari and echoed the complaints about Plaintiff's coaching. In response to all this information, Mr. Massari made the decision not to renew Plaintiff's head coach contract and offer her the assistant coach contract so that she would have some oversight to prevent the conduct that was occurring when Plaintiff had no oversight.

Plaintiff argues the reason her contract was not renewed was because she made complaints about illegal discriminatory activity in the department. The evidence does not show Plaintiff complained about illegal discriminatory conduct by the department. Mr. Massari testified he did not receive these types of complaints from Plaintiff. The complaints he received were about a general frustration with the lack of scholarships for her team and questions about her budget. Nonetheless, even if Plaintiff's allegations that she complained about illegal discriminatory activity to Mr. Massari were true, Mr. Massari's decision to not renew Plaintiff's contract was

1

not because Plaintiff made complaints but because, as described above, he had legitimate non-discriminatory reasons to do so.

In opposition, Plaintiff attempts to add issues of fact that are irrelevant, false or fail to show discriminatory intent or pretext. None of these additional purported facts asserted by Plaintiff create a triable issue of fact that prevents the Court from granting this summary judgment. The facts are clear that Mr. Massari had legitimate non-discriminatory reasons for his decision to not renew Plaintiff's head coach contract without pretext.

## II.  PLAINTIFF'S HEARSAY OBJECTIONS ARE WITHOUT MERIT

Plaintiff objects to nine items of Defendant's evidence, claiming they are hearsay or double hearsay. The evidence objected to by Plaintiff is not hearsay evidence. "Hearsay" means a statement that the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement. Federal Rules of Evidence 801. The evidence objected to by Plaintiff is not hearsay evidence because it is not being presented by Defendant for the truth of the matter asserted. It is admissible to show the reasons why Athletic Director Mark Massari made the decision to not renew Plaintiff's head coach contract.

If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir.1950), rev'd on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534. In *Emich Motors Corp.*, letters of complaints from customers were offered by the defendant as a reason for the cancellation of the dealer's franchise in order to rebut the contention that the franchise was revoked for refusal to finance sales through affiliated finance company. The Court explained, "[w]e agree with the defendants that the complaint

letters received by them should have been admitted, not for their testimonial use, to prove the facts contained therein, but to show the information on which they acted. This is a well-established exception to the hearsay rule." *Id*. at 82. As such, the evidence objected to by Plaintiff is admissible as it is not being admitted for the truth of the matter but instead being admitted to show why Mr. Massari acted.

### III. DEFENDANT OBJECTS TO PLAINTIFF'S EVIDENCE OF HANDWRITTEN NOTES SHE SPECULATES WERE WRITTEN BY ANGELA ROACH

Plaintiff added to the Joint Appendix of Exhibits a page of notes asserting the notes were taken by Angela Roach and the notes establish causation in this case. See Exhibit 26 p. 307. The Regents objects to the notes on the ground that they have not been authenticated as required by Federal Rule of Evidence 901. "Authentication is a condition precedent to admissibility …" *Orr v. Bank of America, NT & SA* (9th Cir. 2002) 285 F3d 764, 773 (internal quotes omitted). The requirement that a piece of evidence be authenticated is perhaps the purest example of a rule respecting relevance: Evidence has no probative value if it is not what the proponent claims it to be. *Ricketts v. City of Hartford* (2nd Cir. 1996) 74 F3d 1397, 1409-1410; *United States v. Branch* (4th Cir. 1992) 970 F2d 1368, 1370. Authentication thus promotes accuracy in fact finding by excluding documents that might be false or otherwise unreliable. *United States v. Perlmuter* (9th Cir. 1982) 693 F2d 1290, 1292-1293; *Mayer v. Angelica* (7th Cir. 1986) 790 F2d 1315, 1338-1339 – (letters improperly admitted where no proof that purported author had written them or that defendant had received them). The party offering the evidence has the burden of presenting sufficient evidence of authenticity to sustain a finding that the evidence is what it is purported to be. FRE 901(a); *United States v. Gagliardi* (2nd Cir. 2007) 506 F3d 140, 151; *United States v. Pang* (9th Cir. 2004) 362 F3d 1187, 1192-1193. Plaintiff has not authenticated the handwritten notes in Exhibit 26. The only testimony Plaintiff asserts in an attempt to authenticate the

3

document is from Ms. O'Brien who admits the notes are not hers and says they are not familiar to her. See Exhibit 26, p. 267. Thus, they have not been authenticated. The notes also do not fall under any of the self-authenticating categories in Federal Rule of Evidence 902.

Even if the notes had been authenticated, which they have not, they are not admissible because no foundation has been laid for the notes. Plaintiff has not established who took the notes, when they were taken, what purpose they were for or what the notes mean. As such they are not admissible in support of Plaintiff's opposition to this motion. Further, without this foundation, it is speculation what the notes could mean, thus they cannot establish causation.

### IV. PLAINTIFF'S ONLY EVIDENCE SHE MADE TITLE IX COMPLAINTS AND ILLEGAL DISCRIMINATION COMPLAINTS IS HER OWN TESTIMONY

There is no evidence whatsoever other than Plaintiff's own self-serving declaration and testimony in this case that she made complaints of illegal discrimination in the department and Title IX complaints to Athletic Director Mark Massari. Mr. Massari testified he did not receive these types of complaints from Plaintiff. UMF 64-65; Ex. 2, p.11.

Nonetheless, even if the Court found Plaintiff met her prima facie showing that she engaged in a protected activity, the Regents has established legitimate non-discriminatory reasons for Mr. Massari's decision to not renew Plaintiff's contract as head coach of the women's water polo team without pretext.

### V. DEFENDANT HAS MET ITS BURDEN OF SHOWING IT HAD LEGITIMATE NONDISCRIMINATORY REASONS FOR THE NON-RENEWAL OF PLAINTFF'S HEAD COACH CONTRACT

There is more than sufficient evidence to show legitimate business reasons for Mr. Massari's decision. Numerous players and parents came to Mr. Massari and Ms. O'Brien with serious complaints about Plaintiff's coaching. UMF D12-15, D27-32. The complaints were of such a serious nature and high volume that Ms. O'Brien felt

4

it was necessary to go to Labor Relations to seek guidance on how to proceed. UMF D34. She was advised to meet with additional players on the team to see if the complaints were substantiated. UMF D35. In addition to these complaints, it came to light that Plaintiff did not get medical care for two sick players when she took the women's team to Hawaii for a tournament. UMF D47, D 48. Plaintiff also required the players to pay her money directly for expenses on the trip. UMF D48. These are sufficient reasons for the decision to not renew Plaintiff' contract as head coach. This shifts the burden to Plaintiff to show pretext. *Ferguson v. Wal-Mart Stores, Inc*. 114 F. Supp.2d 1057, 1063 (E.D.Wach. 2000).

Plaintiff does not present any argument that Defendant has not met its burden to show it had legitimate nondiscriminatory reasons for the non-renewal of Plaintiff's head coach contract. Instead Plaintiff argues pretext.

### VI. PLAINTIFF CANNOT MEET HER BURDEN TO SHOW PRETEXT

"A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094–5 (9th Cir.2005). A plaintiff must show the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang v. University of California Davis*, 225 F.3d 1115, 1123 (9th Cir.2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id*. (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir.1998)). See also, *Steckl v. Motorola, Inc*., 703 F.2d 392, 393 (9th Cir.1983) ("A party opposing a summary judgment motion must produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed.")

5

(quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979))

Plaintiff contends that despite the Regents' legitimate reasons for the non-renewal of the head coach contract, she need only present a sufficiently strong prima facie case for her claim to survive summary judgment, citing *Chuang v. University of Cal. Davis,* 225 F.3d 1115, 1128 (9th Cir.2000). In *Chuang*, the federal appellate court applied a standard of proof applicable to sustain a jury verdict to the burden of proof required to survive a motion for summary judgment. The proper standard is set forth by the court in *Loggins v. Kaiser Permanente International*, 151 Cal.App.4th 1102 (2007), which concluded that "an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce substantial additional evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual." *Id*. at p. 1113.

Plaintiff has provided no direct evidence whatsoever that a discriminatory reason more likely motivated Mr. Massari in his decision. Plaintiff attempts to show Mr. Massari's proffered reasons for the non-renewal of Plaintiff's head coach contract are unworthy of credence using circumstantial evidence, none of which is sufficient to show pretext. We address each of Plaintiff's claims in turn.

- Plaintiff claims no prior reprimands of Plaintiff supports a finding of pretext citing to *Mokler v. County of Orange* 157 Cal. App. 4th 121 (2007).

**Response**: *Mokler* is distinguishable from this case for many reasons. First, the supervisor of the plaintiff in that case praised her job performance one month before the adverse employment action. *Id*. at 140. Here, Plaintiff did not receive praise from any supervisor one month prior to the decision to non-renew her contract. In fact, the opposite occurred when Ms. O'Brien met with Plaintiff to tell her about the complaints against her. Ex. 1, p. 6. Further, this case is distinguishable from *Mokler* because the complaints that were from third parties, not from Mr. Massari or Ms.

O'Brien, which goes against an argument for pretext.

- Plaintiff claims pretext is shown through "discrepancies in testimony about the decision, and a failure to articulate reasons later proffered at the time of demotion."

**Response:** There is no evidence there were discrepancies about the decision made by Mr. Massari. The reasons he made the decision have never changed and were never "later proffered." Plaintiff claims pretext is shown because Mr. Wigo stated the reasons were because too many players quit and Plaintiff had applied for the position before. Mr. Wigo's testimony as to the reasons for the non-renewal is irrelevant because he was not the decision-maker. Nonetheless, his testimony does not diverge from the actual reasons. In context of retaliation, the presence of "shifting" or different justifications for an adverse action is not sufficient to defeat summary judgment when those justifications "are not incompatible" *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir.1997).

- Plaintiff claims pretext is shown because she alleges Diane O'Brien did not follow up with the student athletes and parents that made complaints.

**Response:** Plaintiff does not explain how this could show pretext, nonetheless, there was no need to follow up with the players and parents who made complaints because Ms. O'Brien obtained the information she needed from them when they made the complaints originally. Ms. O'Brien took the complaints seriously and went to Labor and Relations to seek assistance on how to proceed. UMF D34. She was advised by Labor and Relations to see if the original complaints were substantiated by talking to <u>other</u> players on the team. UMF D35.

- Plaintiff claims pretext is shown because she alleges there were student athletes that did not have complaints about Plaintiff.

**Response:** At no point did Mr. Massari assert that all the players on the team complained about Plaintiff's coaching. The concern was that many players and

parents had complained. Plaintiff claims there is an issue of fact as to the truth of the complaints because some players did not complain. As explained above, the issue on summary judgment is not the truth of the complaints but whether an employer honestly believed the reason for its actions, even if the reason is 'foolish or trivial or even baseless.' " *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733–34 (7th Cir.2001).

- Plaintiff claims pretext was shown because she alleges Wolf Wigo had complaints of abuse and was not "demoted."

**Response:** There is no evidence of complaints of any type of abuse by Mr. Wigo. The emails Plaintiff refers to are a few complaints from parents with concerns about the future of the women's water polo program because of the change of leadership of the team. The emails were from supporters of Plaintiff who wanted Plaintiff back as the head coach. In addition, there are nowhere near the same number of complaints that Mr. Massari and Ms. O'Brien had received about Plaintiff the year prior. Lastly, Mr. Massari and Ms. O'Brien did not receive any complaints about Mr. Wigo's coaching by any of the players. Ex. 2, p. 11-12.

- Plaintiff claims no policy existed regarding the health care of student athletes and collecting money directly from student athletes:

**Response:** Whether or not there were policies in place[1] does not show pretext. One of Mr. Massari's reasons for the non-renewal was Plaintiff's refusal to seek medical care for two seriously ill players during their team trip to Hawaii. This was substandard coaching and unacceptable for conduct by a head coach. Mr. Massari was concerned about the safety of the student athletes. For Plaintiff to not obtain care for two sick athletes on a team trip was unacceptable and was one of the reasons he decided to not renew Plaintiff's contract as head coach. Whether or not there was a policy in place was not the issue. The same is true for collecting money

---

[1] There were policies in place. See Ex. 19, p. 90-138.

directly from players for expenses on the trip.

- Plaintiff claims pretext is shown because the University allowed her to continue interacting with Student Athletes.

**Response:** The University's actions were appropriate in that it investigated the complaints and upon completion of that investigation took action that put Plaintiff in a position as assistant coach where she had oversight and could not treat the players improperly because she did not have the power to do so as she did in the head coach position. This oversight was necessary to prevent Plaintiff's verbal attacks on players and prevent the health care and money issues from occurring again. Thereafter her position as a physical therapist did not pose a threat to the students because it was not a coaching/power position over the student athletes.

- Plaintiff claims pretext is shown because Plaintiff was not given an opportunity to meet with the student athletes who complained about her.

**Response**: Plaintiff has failed to explain how this shows pretext. The complaints made by the players were made in confidence. It is illogical that Ms. O'Brien would divulge the players' identities especially when they were still playing for Plaintiff and could be retaliated against for coming forward with complaints about Plaintiff.

- Plaintiff claims pretext is shown because Mr. Massari did not take Ms. O'Brien's recommendation to keep Plaintiff as head coach.

**Response**: Again, it is unclear how this shows pretext. Mr. Massari was the Athletic Director. He made all decisions regarding contracts for the head coaches at UCSB. He took into consideration what the investigation revealed and made a decision based on what the investigation uncovered.

### VII. PLAINTIFF'S CLAIM FOR GENDER DISCRIMINATION FAILS AS A MATTER OF LAW

At the parties' meet and confer conference on this motion, Plaintiff's sole claim for gender discrimination was unequal pay between herself and Mr. Wigo.

9

DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff claims they had the same responsibilities and job duties as head coaches of both teams and claims Mr. Wigo did not have any additional duties as the Director of Water Polo. The evidence establishes the contrary, but for the sake of argument, if this were true Plaintiff does not address the factors that Mr. Wigo has coached at Division I level far longer than Plaintiff, played in the Olympics, played professionally, and won twenty-two national championships and two world championships. UMF D69-D70, Ex. 4, p. 18; UMF D71, Ex. 4, p.18. Not to mention his reputation in the water polo community helps the University recruit top players for both the men's and women's teams. Plaintiff does not dispute any of these facts, all of which provide the basis for a higher rate of pay. See *Stanley v. University of Southern California*, 178 F. 3d 1069 (9th Cir. 1999).

Plaintiff now asserts for the first time in opposition to the motion that the University treated Mr. Wigo better than Plaintiff "indicating discrimination." Plaintiff's state-law discrimination claim fails for the same reasons that her retaliation claims fail: even if she could prove a prima facie case of discrimination, she has failed to demonstrate that the legitimate, non-discriminatory reasons for her non-renewal are pretextual.

## VIII. CONCLUSION

For the foregoing reasons and the reasons set forth in detail by Defendant in the Joint Brief in Support of Defendant's Summary Judgment, the Regents' Motion for Summary Judgment should be granted.

Dated: October 20, 2016

NYE, PEABODY, STIRLING, HALE & MILLER, LLP

By: _/S/_
Jonathan D. Miller, Esq.
Jennifer M. Miller, Esq.
Attorneys for Defendant, REGENTS OF THE UNIVERSITY OF CALIFORNIA